IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MERRICK STEDMAN, #233-507 | * | |
| Plaintiff | * | |
| v. | * | CIVIL ACTION NO. L-10-2122 |
| J. WHITE, *CASE MANAGER* | * | |
| C. ZIES, *CASE MANAGER* | | |
| | * | |
| Defendants | | |
| | *** | |

**MEMORANDUM**

Pending are Defendants' Motion to Dismiss or for Summary Judgment and Plaintiff's self-represented opposition.[1] ECF Nos. 18, 21 and 23. The case is ripe for dispositive review. Upon review of papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. See Local Rule 105.6 (D. Md. 2010).

---

[1] Plaintiff has also filed a Motion for Injunction wherein he asks that the Court enter an order "warning case management personnel and correctional staff of the penalty of impeding the Plaintiff's attempts to properly exercise his Constitutional right to pursue his complaint without obstruction." ECF No. 20. Plaintiff's motion stems from difficulty he encountered having his opposition to the dispositive motion copied. He was ultimately successful in having the motion copied and filed with the Court in a timely manner. Thus, the motion shall be denied. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial than the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate: (1) by a "clear showing" that he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Resources Defense Council, Inc., 555 U.S.7 (2008). Plaintiff has failed to meet his burden.
    Plaintiff has filed what is entitled a Motion for Summary Judgment. ECF No. 21. The Motion is in reality an Opposition to the pending dispositive Motion and has been considered as such.
    Plaintiff has also filed a Motion to Amend Complaint. ECF No. 22. Plaintiff alleges that he has been retaliated against for having filed the instant Complaint. The motion to amend, received after the filing of dispositive motions, shall be denied. See Fed. R. Civ. Pro. 15(a). If Plaintiff believes his constitutional rights have been violated due to retaliation he is free to file a separate civil rights complaint.

**Background**

Plaintiff alleges that on October 22, 2009, he was placed on administrative segregation due to allegations that he was a threat to other inmates, staff, or institutional security. On December 4, 2009, he was placed back into the general population. On December 10, 2009, he was once again placed on administrative segregation where he remained up to the time of the filing of the instant Complaint. Plaintiff states that the administrative segregation review board, comprised of case managers White and Zies, have failed to provide him due process. Specifically, Plaintiff states that he was not advised why he was placed on administrative segregation. When he asked Defendants why he was placed on administrative segregation, they told him they did not know the reason, yet recommended he continue on administrative segregation. Plaintiff states that the conditions of administrative segregation are "more supermax like than a normal administrative segregation in any other previous maximum 1 facility." ECF No. 1.

Plaintiff also states a conflict of interest exists because the only way he can have copies made is through Defendants. He states that "if I miss a crucial deadline, that I gave the defendants my motion to copy and they say that I didn't." He states that every time he attempts to mail an appeal of an administrative remedy request to the Commissioner or Inmate Grievance Office it is not delivered and he is forced to resort to "creative means" in an effort to have same delivered. He alleges that these problems exist because all segregation inmates must turn mail into their tier officer to be mailed. Id.

In response, Defendants assert that Plaintiff was transferred from Jessup Correctional Institution (JCI) to the North Branch Correctional Institution (NBCI) on February 19, 2008, on administrative segregation status. He was placed in the general population two days later where he

remained until March 6, 2008, when he was placed on disciplinary segregation. Plaintiff remained on disciplinary segregation until he was returned to general population on September 12, 2008. ECF No. 18, Ex. A, Attachment 1.

Plaintiff was placed on administrative segregation on October 22, 2009, by Lt. Thompson, Housing Unit #4 Manager, because prison personnel believed Plaintiff was a danger to the security of the institution, inmates and/or staff. Id., Ex A, Attachments 1, 4 and 5. A letter was received from an inmate informant advising that Plaintiff was attempting to incite inmates to attack correctional officers in order to bring attention to NBCI. The allegations were investigated and validated by interviews with confidential informants. It was noted that Plaintiff had prior guilty findings for infractions involving disruptive activity, weapons, and an assault on staff. It was also noted that Plaintiff was a validated member of a security threat group, the gang "Murder, Inc." Id. The note from the inmate informant also stated that Plaintiff did not like the selection process for the inmate tier representative and had problems with the representative. Inmate informants stated that Plaintiff was encouraging inmates to stockpile commissary items in anticipation of a lock-down period. Id.

During Plaintiff's administrative segregation review, held on October 27, 2009, he was advised of the reason for his placement on administrative segregation status. Plaintiff advised the administrative review team that he spoke with the investigator prior to the review and understood they would recommend he remain on administrative segregation. Plaintiff did not have any questions or comments at that time. Id., Ex. A, Attachment 3, p. 5 and Attachment 5.

Plaintiff was advised in writing, on November 18, 2009, that he was scheduled to appear for a Reclassification Interview in December. The notice was accompanied with a discussion of his

3

Initial Individual Case Plan Development. Id., Ex. A, Attachment 3, p. 5 and Attachment 6. The following day, the case management team recommended Plaintiff remain on administrative segregation. The recommendation was approved on November 24, 2009. Id. Ex. A, Attachment 3, p. 4-5, Attachment 6.

Plaintiff was interviewed for his administrative segregation review on December 1, 2009, and was advised of the team's recommendation to reassign him from administrative segregation to laundry custodian. Id., Ex. A, Attachment 3, p. 4. It was noted that the investigation into Plaintiff's activities was completed and the investigator recommended that Plaintiff be returned to the general population. Plaintiff had his security reclassification interview on the same day and was informed he would remain on maximum security status. Plaintiff had no questions regarding either interview. Id., Ex. A, Attachments 3, 7 and 8.

Plaintiff was placed back on administrative segregation on December 10, 2009, by Lt. Thomas because it had been determined that Plaintiff was a threat to security due to his status as a high-ranking member of the gang Murder, Inc., and recent information having been obtained that indicated violence was expected from that gang. Id. Ex. A, Attachment 9. Plaintiff was seen for administrative segregation review on December 15, 2009 and was advised he was deemed a threat to the institution. Id., Ex. A, Attachment 3 and 10. Plaintiff questioned why he was again placed on administrative segregation and was told another investigation was pending. He was further advised that he would be seen every 30 days for segregation reviews. Id., Ex. A, Attachment 3.

During his January 12, 2010 review, he was advised that information was requested from the investigation and that he would remain on administrative segregation due to his gang activity. Plaintiff requested specific information regarding his placement on administrative segregation. At

4

that time, Plaintiff also requested copy work of legal materials. He was advised of copying request procedures. He also requested a copy of his "print out." Id., Ex. A, Attachments 3 and 11.

Monthly administrative segregation reviews were conducted for Plaintiff from February through July 2010. Plaintiff had no comments or questions during that time. Id. Ex. A, Attachments 3 and 17. He was returned to general population on August 2, 2010, after the second investigation was completed and it was recommended by security that he be returned to general population Ex. A, Attachment 1, 17 and 18.

In his Opposition, Plaintiff disputes Defendants' contention that he was in general population until March 6, 2008. Plaintiff states that he was on disciplinary segregation from February 9, 2008 until September 11, 2008.[2] ECF No. 21 and ECF No. 18, Ex. 1. He states that the last review he attended relative to the first placement was on November 19, 2009. He states he was surprised when, on December 4, 2009, the tier officer told him to pack up to return to population. He states that the review board had not told him he was being returned to population. He further states that no security review was conducted in his presence and no "individual Case Plan Development" was performed. ECF No. 21.

Plaintiff states that he was seen by the Inmate Parole Associate, a prerequisite to parole, on November 5, 2010. He states that Case Manager Teats advised Plaintiff he was to conduct an "Individual Case Plan" because none was in the file sent to the parole board. Id.

Plaintiff states that his placement on administrative segregation due to his being a gang member was a "smoke screen." He opines that he was placed on administrative segregation due to

---

2  Plaintiff alleges for the first time that he was subjected to an unlawful strip search when he was transferred to NBCI and assaulted by officers. These claims are not properly before the Court as they were not raised in his Complaint. If Plaintiff believes his constitutional rights were violated he is free to file a new civil rights complaint detailing these allegations and naming proper parties.

his having challenged: (1) an unauthorized visiting room policy in state court; (2) the property officer's policy against non-clear type writer; and (3) the chaplain's denial of his right to marry. He reiterated that he was never advised of the rationale for his placement on administrative segregation, thus denying him his right to due process. Id.

Additionally, Plaintiff focuses on his claim that confinement on administrative segregation at NBCI constitutes an atypical and significant hardship giving rise to a liberty interest. ECF No. 21. He notes the differences between conditions for administrative segregation inmates and general population inmates, specifically the amount of recreation, visitation, commissary, property, lack of programming, and prohibition on marriage while housed on segregation status. Plaintiff also notes that all mail must be turned over to correctional officials to be mailed, and with mail addressed to the warden, commissioner or IGO often is not delivered. He states that he should have been accorded a due process hearing and notification of the factual basis for the charges against him. He maintains that the administrative segregation confinement constituted an atypical and significant hardship under the cases of Wilkerson v. Austin, 545 U.S. 209 (2005) and Farmer v. Kavanaugh, 494 F. Supp. 2d 345 (D. Md. 2007). Plaintiff argues that Defendants have failed to come forward with evidence justifying his placement on administrative segregation, and asserts that even though he remained assigned to administrative segregation he did not receive meaningful monthly classification reviews to screen his custody status and to examine the reasonableness of continuing his confinement on administrative segregation. Id.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to...the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Mootness

Defendants assert that Plaintiff's Complaint for injunctive relief is now moot because he was released from administrative segregation on August 2, 2010. ECF No. 18.

"'[A] case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). "'The inability of the federal judiciary to review moot cases derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'" Id. (quoting DeFunis v. Odegaard, 416 U.S. 312, 316 (1974)).

Under 42 U.S.C. § 1983, an actual controversy must exist at all times while the case is pending. See Steffel v. Thompson, 415 U. S. 452, 459 n.10 (1974). It is possible for events subsequent to the filing of the complaint to make an injunctive relief request moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). This is so even though such a case presented a justiciable controversy at an earlier point in time and an intervening event rendered the controversy moot. See Calderon v. Moore, 518 U.S. 149, 150 (1996). Indeed, "[w]here on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary juridical pronouncements on even constitutional issues obtained…" See Lewis v. Continental Bank Corp., 494 U.S. 472, 480 (1990). To the extent that Plaintiff is seeking injunctive relief, the claim was mooted when he was released from administrative segregation. His claim for damages for the past wrongs alleged, however, is not moot, and will be analyzed below.

**Due Process Claims**

In the prison context a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U. S. 472, 484 (1995). Following the reasoning of the Supreme Court in Sandin, the Court finds no liberty violation implicated in the decisions associated with Plaintiff's placement on administrative segregation at NBCI, as it is not atypical for inmates to be placed on administrative segregation for any number of reasons. See Hewitt v. Helms, 459 U.S. 460, 468 (1983); Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). The Court finds there is nothing in the record which shows that the nature of Plaintiff's assignments to administrative segregation comprised the atypical hardships contemplated by Sandin or Beverati. Therefore, they do not implicate a liberty interest. Further, Plaintiff's transfer to NBCI does not in and of itself implicate a liberty interest; he has no entitlement to notice and an opportunity to be heard prior to his transfer because, as a prisoner, he has no liberty interest in being housed in any particular prison facility. See Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976).

Plaintiff argues that the nature of his confinement on administrative segregation at NBCI was more restrictive than any other administrative segregation unit in the Division of Corrections. He cites Wilkinson v. Austin, 545 U.S. 209 (2005) in support of his position. In Wilkinson, the Supreme Court examined the due process issue involving inmates confined at the Ohio State Penitentiary ("OSP"), a super-maximum security prison where almost all human contact was prohibited and communication between cells was forbidden, to determine whether a liberty interest was created in the isolated confinement and if so, what due process was to be afforded to the inmate so confined. At the OSP, exercise was limited to one hour a day in a small indoor room and the

inmates were exposed to light 24 hours per day. Wilkinson recognized that the deprivations detailed in that case exist in most solitary confinement facilities and looked at the presence of added factors to find "an atypical and significant hardship" on inmates such that they had a liberty interest in avoiding it. Id., at 224. These factors were (1) the potentially indefinite length of detention, limited only by the length of the underlying sentence, and (2) being rendered ineligible for parole due to confinement. Id. The Supreme Court found that "while any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context," triggering a protected liberty interest in avoiding placement on such confinement. Id. In reviewing Wilkinson, it would appear that the Court instructed lower courts to consider the totality of circumstances in a given facility. Id.

Applying the Supreme Court's rationale in Wilkinson, this Court found that a transfer to the Maryland Correctional Adjustment Center ("MCAC"), a super-maximum security facility, implicated procedural due process protections, and concluded that:

> In light of the prohibition of "almost all human contact," coupled with severe restrictions on movement or any type of activity, both of which may last for the duration of some inmates' underlying sentences, and may be less likely to be relieved by parole than the less arduous conditions at other facilities, the conditions at MCAC create such a hardship when judged against "any plausible baseline." Inmates thus have a protected liberty interest in avoiding transfer to MCAC.

Farmer v. Kavanaugh, 494 F. Supp. 2d 345, 358 (D. Md. 2007).

This Court later found that conditions of NBCI's Special Management Unit, an environment far more restrictive than the conditions described by Plaintiff on NBCI's administrative segregation unit, did not create an atypical hardship. See Ibrahim v. Rouse, Civil Action No. PJM-08-492 (D. Md. 2008). The record reveals that inmates on Administrative Segregation at NBCI have exercise

10

periods, showers and meals. Privileges available to general population inmates are available to administrative segregation inmates where possible. ECF No. 21, Ex. A, Attachment 19.

To the extent Plaintiff claims that his assignment to administrative segregation adversely affected his eligibility for parole, such claim lacks evidentiary support. First, unlike the Wilkinson inmates, Plaintiff's assignment did not render him ineligible for parole for the duration of his stay. Second, Plaintiff's violent offense and immigration status are factors weighing against his suitability for parole. Thus, the undersigned does not find any assertion regarding parole eligibility persuasive.

The Wilkinson Court found that the process provided to Ohio inmates assigned to OSP complied with due process protections, noting that the Ohio inmates received written notice 48 hours in advance of a hearing "summarizing the conduct or offense triggering the review" and were provided a prepared form explaining why the review was initiated. Wilkinson, 545 U.S. at 216. The Ohio inmates were permitted to attend the hearing where they were allowed to offer "pertinent information, explanation and/or objections to OSP placement and may submit a written statement," but could not call witnesses. Id. In addition to the notice and hearing, the Ohio system included a review of the committee's decision by the warden, who was to provide reasons for an approval of an assignment, as well as an additional review by a Bureau which was vested with final decision-making authority over all inmate assignments in Ohio. Id. After these reviews were completed, the inmate was allowed 15 days to file objections with the Bureau and only after this 15-day period expired was the inmate transferred to the facility. Id. at 217. Inmates who were transferred were given another review within 30 days of their arrival and, thereafter, were reviewed yearly. Id.

The three factors to be balanced to determine how much process is due are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Wilkinson, 545 U.S. at 224-225, citing Matthews v. Eldridge, 424 U.S. 319, 335 (1976).

Defendants have filed documentation concerning investigation of information concerning Plaintiff's alleged threatening activity. Plaintiff has been provided the materials in redacted form. It is clear that correctional employees received information from inmate informants that Plaintiff was actively soliciting inmates to attack correctional employees. Plaintiff was also identified as a high ranking member of a security threat group that was believed to be gearing up to cause a disturbance. While Plaintiff claims that he was never placed on notice of and was not given an opportunity to refute the allegations, his protest is belied by the record. Moreover, Plaintiff does not dispute any of these allegations; rather, he claims that Defendants suspected him of being a member of a gang for many years and that most inmates have security threat group affiliations.

As a prisoner, Plaintiff is not entitled to the process due to persons who remain at liberty. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." Wilkinson, 545 U.S. at 225. He is not entitled to an adversarial hearing, witnesses, evidence introduction, or other trappings of a full trial.

Plaintiff acknowledges that he was told he was being assigned to administrative segregation because he was believed to be a threat to the security of the institution. The exigencies present explain why notice may not have been provided before Plaintiff was assigned to administrative segregation. Expertise of prison officials in matters of security must be given due deference. See Sandin v. Conner, 515 U.S. 472, 482 (1995). Both of Plaintiff's assignments to administrative segregation were supported by documentation of his involvement in activities threatening to the security of the institution. See ECF No. 21.

While the process afforded Plaintiff did not provide for as many levels of administrative review as provided to the inmates in Wilkinson, the reviews occurred monthly rather than annually. The undersigned finds that the process afforded to Plaintiff met with minimal constitutional standards.

**Eighth Amendment Claim**

To the extent Plaintiff alleges he was subjected to cruel and unusual punishment as a result of his confinement on administrative segregation, his claim fails. Routine discomfort is part of prison life. See Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996), citing Hudson v. McMillan, 503 U.S. 1, 8-9 (1992). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Notwithstanding the isolation Plaintiff suffered while housed on administrative segregation and his allegations that he had limited activities (ECF No. 1), there is no evidence that he suffered

serious or significant physical or emotional injury as a result of his confinement. Defendants are, therefore, entitled to summary judgment on any Eighth Amendment claim.

### DCD violation

To the extent Plaintiff alleges Defendants violated their own policies in regard to his placement on administrative segregation, his claim fails. The adoption of procedural guidelines does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. See Culbert v. Young, 834 F.2d 624, 628 (7th Cir. 1987).[3]

### Access to Courts

Plaintiff complains that he can only obtain copies of his legal documents from his case managers and that sometimes they claim he did not give the documents to them. He also alleges that his efforts to exhaust administrative remedies are thwarted by non-delivery of his mail. Prisoners have a constitutionally protected right of access to the courts. Bounds v. Smith, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any

---

[3]Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. See Myers v. Kelvenhagen, 97 F.3d 91, 94 (5th Cir. 1996).

> other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" O'Dell v. Netherland, 112 F.3d 773, 776 (4th Cir. 1997) quoting Lewis, 518 U.S. at 355. "The requirement that an inmate alleging a violation of Bounds must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." Lewis, 518 U.S. at 349. To state a claim based on delay or non-delivery of legal mail, a prisoner must allege adverse consequence as basis for allegation that delay or non-delivery deprived him of meaningful access to courts. Id.; see also Morgan v. Montanye, 516 F.2d 1367 (2d Cir. 1975) (single interference did not violate Sixth Amendment), cert. denied, 424 U.S. 973 (1976). Plaintiff has failed to allege much less demonstrate actual prejudice to any of his cases, as such his claim is subject to dismissal.

## Conclusion

In light of the above analysis, Defendants' Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, shall be GRANTED. A separate Order follows.

July 11, 2011                                          /s/
                                            _____
                                            Benson Everett Legg
                                            United States District Court